**WORKING SOLUTIONS**

September 22, 2024

*VIA ECF*

Judge Margaret M. Garnett
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

        **Re:**    *Raghnal et al v. Josselyne, Inc*.,
                 Case No. 24-cv-00825 (MMG)

Dear Judge Garnett:

      This joint letter is submitted by Plaintiffs Aaliyah Raghnal, Alex Malcolm Mills, Natalie Dix, and Rachel Chau ("Plaintiffs"), and Josselyne, Inc. d.b.a. JHA Management or Josselyne Herman & Associates ("JHA" or "Defendant"), requesting that the Court approve the settlement of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims brought in this action, as provided in the Settlement and Release of Wage Claims Agreement (the "Settlement Agreement"). The parties jointly request that the Court approve this settlement based on the standards set out in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d Cir. 2015). Executed copies of the Settlement Agreement are appended hereto as **Exhibit 1**.

      **I.**        **The Settlement Agreement**

      On February 5, 2024, Plaintiffs filed this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and pursuant to the collective action provision of 29 U.S.C. § 216(b) alleging that Plaintiffs and others who are similarly situated were denied minimum wage pay. Plaintiffs also brought individual and representative wage claims under the New York Labor Law Art. 6 §§ 190 *et seq.,* Art. 19 §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations, N.Y. Comp. Codes R. & Regs. tit. 12, Part 142 *et seq*., as a class action pursuant to Fed. R. Civ. P. 23 for minimum wage violations and inaccurate wage notices and statements.

      Plaintiffs alleged that they and the putative class and collective class members were engaged by Defendant as unpaid interns or underpaid assistants whose work was essential to JHA's business operations. Plaintiffs claim that JHA utilized an unlawful policy and practice of misclassifying Plaintiffs as unpaid interns (non-employees) and later as nominally paid assistants. Defendant denies these allegations and maintains that all interns were properly classified, and that no assistants were underpaid.

As alleged in Plaintiffs' complaint, Raghnal and the Plaintiffs' responsibilities as interns included the following:

(a.) Handling submissions within a database where casting agents submitted their clients for bookings;

(b.) Managing all correspondence with casting agents and JHA's clients about their bookings;

(c.) Handling bookkeeping;

(d.) Completing personal requests for JHA's owner;

(e.) Training new interns; and

(f.) Other general office administrative tasks.

Defendant denies Plaintiffs' allegations regarding their responsibilities as interns. Defendant maintains that Plaintiffs performed barely any work, and that the internship was primarily educational and for the benefit of the interns.

Plaintiffs allege that JHA's staff was comprised of least 9-10 interns and 1-2 assistants. At least 2-3 interns were scheduled to work every day. According to Plaintiffs, assistants largely retained the same duties they had as interns but were merely given a title change and nominal pay of approximately $200 biweekly. All of the interns were required to sign into the intern g-chat account and tell JHA's owner they were at work. Defendant denies these allegations as well.

The parties, through counsel, attempted to negotiate a settlement for approximately four months. During these negotiations, the parties exchanged information relevant to Plaintiffs' claims and JHA's defenses, including records reflecting Plaintiffs' hours worked. (During this time, Plaintiffs' counsel determined that no other JHA interns or assistants were likely to join the class/collective.) On July 22, 2024, the parties engaged in approximately eight hours mediation through the Mediation Program of the United States District Court for the Southern District of New York (the "Mediation"), and reached a settlement in principle.

The total settlement is Seventy-Five Thousand Dollars ($75,000.00), inclusive of attorneys' fees and costs. Of the total settlement amount, Fifty-Thousand Dollars ($50,000.00) goes to Plaintiffs (the "Plaintiffs' Portion"). Based on Plaintiffs' counsel's damages assessment, the Plaintiff's Portion of the settlement covers the full amount of minimum wages they are due, plus liquidated damages.[1] In the Settlement Agreement, the Plaintiffs' Portion is allocated to the individual Plaintiffs proportionate to their alleged hours worked. Accordingly, the Settlement Agreement is a reasonable compromise of the *bona fide* disputed issues in this case.

The parties believe that the terms and conditions of the settlement are fair, reasonable, and in their mutual best interests, in light of the documents and information exchanged by the parties in

---

[1] JHA maintains that Plaintiffs are owed nothing.

during the approximately four months of negotiations preceding the Mediation. In addition, Plaintiffs believes that the certainty of settlement is better than the uncertain outcome of continued litigation, and Plaintiffs prefers to receive a payment now without the delay and uncertainty that litigating the matter would entail.

## II. The Court Should Find the Settlement Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 1:14-cv-00311, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

In evaluating the proposed settlement, this Court should consider the totality of the circumstances, including the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335.

A. *Plaintiffs' Range of Possible Recovery*

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particular sum." *Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (internal citations and quotations omitted). Here, the proposed settlement is within the range of what Plaintiffs would be likely to recover if they prevailed at trial. As noted above, the Plaintiffs' Portion represents the full amount of their minimum wage underpayment (based on Plaintiffs' allegations of hours worked), plus liquidated damages. Plaintiffs agreed to accept no value for their wage notice and statement claims in light of the Court's holding in *Sevilla v. House of Salads One LLC*, No. 20-cv-6072, 2022 WL 954740 (E.D.N.Y. Mar. 30, 2022).

Notably, Defendant maintains that Plaintiffs were properly classified as interns, and that they did not work the hours alleged. As such, Plaintiffs risk receiving substantially less – potentially nothing – if Defendant prevails at trial.

B. *The Extent to Which the Settlement Will Enable the Parties To Avoid Anticipated Burdens And Expenses In Establishing Their Respective Claims And Defenses And The Seriousness Of The Litigation Risks Faced By The Parties*

A settlement avoids a trial on the merits that would have an uncertain potential outcome. *See Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In reviewing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiffs against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).

In light of these factors, the settlement represents a reasonable compromise of the *bona fide* disputes in this matter, which largely relate to Plaintiffs' status as non-employees and the amount of hours Plaintiffs worked. While counsel for Plaintiffs and Defendant both anticipate a successful outcome at trial, all parties recognize that the nature of a jury trial and appellate practice is inherently uncertain, lengthy, and costly. The settlement eliminates these risks.

Without admitting any liability or wrongdoing, Defendant is making a business decision to enter this settlement and forego litigation over disputed issues of law and fact in order to bring an early and cost-effective resolution to this matter, and avoid continued litigation costs and the uncertain nature of extended litigation.

Defendant maintains that Plaintiffs were properly classified as interns, that they did not have the responsibilities they allege, and that Plaintiffs performed minimal work for JHA. Defendant further maintains that Plaintiffs lack standing to bring wage notice and paystub claims under the New York Labor Law, and Defendant is prepared to respond to the complaint with a Rule 12 motion if this case is not resolved.

On the other hand, Plaintiffs are willing to resolve their claims because they will receive immediate payment and will avoid the uncertainty of trial. In Plaintiffs' counsel's assessment, after a thorough review of the facts and the law, the settlement represents the full underpayment recovery on minimum wage violations that Plaintiffs would have achieved had they prevailed on their claims. Weighing the benefits of an almost immediate, guaranteed payment to the Plaintiffs against the significant risks and burdens associated with proceeding with a lengthy litigation, and the possibility that Plaintiffs could recover nothing, the settlement is reasonable, and these factors weigh in favor of approval.

    C.  *Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a…settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). At all times, the parties' negotiations were on an arm's-length basis by attorneys well-versed in wage and hour litigation. Further, as noted above, the parties reached a settlement only after four months of negotiations between counsel, the exchange of documents reflecting hours worked, and the Mediation. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

    D.  *Possibility of Fraud or Collusion*

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients throughout the negotiations on the benefits and risks of continued litigation.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case, based on approximately four months of negotiations, the exchange of documents, and the Mediation. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

### III. Plaintiffs' Counsel is Entitled to a Reasonable Fee

Under the Proposed Settlement Agreement, Plaintiffs' attorneys' fees are twenty-five thousand dollars ($25,000.00). Plaintiffs' counsel submits that the requested fees and costs are reasonable. A court may calculate a reasonable attorneys' fee either by determining the so-called "lodestar" amount or by awarding a percentage of the settlement. *See McDaniel v. Cty. of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).

Here, Plaintiffs' attorneys are seeking fees representing one-third of the settlement. Pursuant to the written retainer agreement between The Law Office of Christopher Q. Davis, PLLC (the "Firm") and the Plaintiffs. Plaintiffs agreed that the Firm would represent them on a contingency basis in an attempt to recover unpaid wages and damages and that the Firm would either retain 33.33% of any gross recovery or the full amount of any Court-awarded attorneys' fees.

The actual lodestar amount in this matter is calculated at approximately $22,096.50.[2] The time records containing the lodestar amount for this matter are attached hereto as **Exhibit 2**. The lodestar amount was calculated using an hourly rate of $600 for attorney Christopher Q. Davis and $375 for Hajar Hasani. The firm typically bills Mr. Davis at a rate of $600 an hour; Hajar Hasani at a rate of $375; and paralegals (Antero Barrantes) at $150. The total contingency fee was allocated evenly between the Plaintiffs' minimum wage recovery.

Courts usually apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.* (citation omitted); *see also Parker*, *v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (endorsing the *Goldberger* "cross check[]"). As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *See Hicks v. Morgan Stanley, et. al.*, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005). In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 (citation omitted). Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]"

---

[2] Plaintiffs' counsel's lodestar includes the amount of time spent litigating all claims in this matter.

*Id.*

In this district, hourly rates of approximately $500-$600 for partners, $350-$400 for associates, and $150 for law clerks and paralegals have been awarded in employment cases. *See e.g., Williams v. Epic Security Corp.*, 368 F.Supp.3d 651, 657-658 (S.D.N.Y. 2019) (approving $600 hourly rate for Partner and $150 rate for law clerks); *Powell v. Metro One Loss Prevention Servs. Grp.*, 12-CV-4221 (LAP) (DF), 2015 WL 9287121, at **2-3 (S.D.N.Y. Feb. 5, 2015), report and recommendation adopted, 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015) (setting hourly rate for senior partner in employment case at $ 650).

Here, Plaintiffs' Counsel does not seek a lodestar multiplier and in fact is requesting less than they have billed on this matter. The time spent by Plaintiffs' Counsel is described in the contemporaneous time records attached hereto as Exhibit 2. The hours worked by Plaintiffs' counsel resulted in a lodestar of approximately .88.

Plaintiffs are represented by The Law Office of Christopher Q. Davis, PLLC, ("LOCQD") a firm that almost exclusively practices plaintiff-side labor and employment law. Christopher Q. Davis has more than twenty years of experience in litigation and 15 years experience in employment law. Mr. Davis is the Founding Partner of The Law Office of Christopher Q. Davis. He has served as class counsel in dozens of class actions, including *Landin et al. v. UBS et al*, 10-CV-711 (SDNY); *Bardouille v. Goldman Sachs & Co.*, 10-cv-4285 (SDNY), *Fouathia v. Gurwich Products*, 10-CV-5411 (SDNY); *Gomez v. Gravitas Technology, Inc.*, 10-CV-6412 (SDNY); *Martinez v. Forest Laboratories, Inc.* et al, 10-CV-06032 (SDNY); *McKenzie v. Schulte Roth & Zabel LLP*, 11-CV-3991 (SDNY); *Butt v. Megabus Northeast, LLC*, 11-CV-3993 (SDNY); *Orgill v Ingersoll-Rand Co.*, NY County Index No. 101142/10; *Bryan, et al. v. Urban Telecommunications, Inc., et al.*, 12-CV-2186 (SDNY); *Oleniak et al. v. Time Warner Cable, Inc. et al.*, 1:12-cv-03971(KPF) (SDNY); *Alexander et. al. v. Safeguard Storage et al.*, 1:13-cv-06061-AMD-RLM (EDNY); *Hibbert et al. v. Central Parking Systems, Inc.*, 1:12-cv-07970-VSB (SDNY); *Hartley et al v. Wells Fargo & Company et al,* 2:14-cv-05169 (EDNY); and *Lobbe v. Cablevision System Corp., et al.*, 1:16-cv-02207-AKH (SDNY); *Douglas v. Allied Universal Security Services, et al.*, Case No. 17-cv-6093; *Park et al v. FDM Group Inc.*, :16-cv-01520-LTS-SN (SDNY); *O'Conner et al v. Agilant Solutions Inc.*, 1:18-cv-06937-GHW (SDNY); *Pulliam et al v. Trans Express, Inc.*, et al, 1:19-cv-04038-RRM-VMS (EDNY); and *Del Aguila v. Newmark Solutions Corp et al*, 1:19-cv-07372 (EDNY). Ms. Hajani was an Associate at the LOCQD with more than three years of experience.

**IV. Conclusion**

For the reasons set forth above, the parties respectfully request that the Court approve the settlement as reflected in the Settlement Agreement. Plaintiffs' counsel further requests that the Court approve the attorneys' fee portion of the settlement as fair and reasonable.

Should you have any questions, please do not hesitate to contact us.

                                        Sincerely,

                                        Christopher Davis
                                        The Law Office of Christopher Q. Davis
                                        80 Broad St Suite 703
                                        New York, New York 10004
                                        646-430-7930 (main)

cc:       All Counsel (via ECF)